UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MEHMET CAN ASKER,

        Petitioner,

    v.

ANGELA MARICH, *in her official capacity*
*as Field Office Director, Buffalo Field Office,*
*U.S. Immigration & Customs Enforcement*;
*et al.*,

        Respondents.

1:26-CV-00332-MAV

**ORDER**

---

On February 24, 2026, Petitioner Mehmet Can Asker ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, filed a "Verified Emergency Petition for Writ of Habeas Corpus" pursuant to 28 U.S.C. § 2241. ECF No. 1. After considering Respondents' return on its Order to Show Cause, the Court issued an order on April 14, 2026, finding that the statutory basis for Petitioner's detention is 8 U.S.C. § 1226(a), and directing that Petitioner be provided with an initial bond hearing "as established by existing federal regulations." ECF No. 7 (the "April 14 order").

Consistent with the Court's order, a bond hearing was scheduled before an Immigration Judge for April 23, 2026. ECF No. 10-2 at 2. On April 22, Petitioner's counsel sought a continuance of the bond hearing, noting that her request to the BFDF for one-time access to Petitioner's phone to obtain proof of his verifiable address upon release and his prior lawful employment remained pending. *Id.* Immigration Judge Mary Baumgarten (the "IJ") denied the request for a continuance, and explained that

1

"the matter is a federal court ordered bond redetermination hearing as a result of an application filed by [Petitioner], that was granted via Order, dated 4/14/2026, that was sent to counsel of record[1] in this proceeding also and has a defined hearing deadline." ECF No. 10-1 at 1.

The IJ held the hearing as scheduled on April 23, 2026 and denied Petitioner's release on the grounds that he had not met his burden of demonstrating he was not a flight risk. ECF No. 8 at 2. On May 4, 2026, Petitioner filed a motion before this Court contending that the bond hearing did not comply with the April 14 order. ECF No. 10. Respondents filed papers in opposition. ECF No. 12. For the reasons set forth in this Order, the Court finds that Petitioner has failed to demonstrate that the bond hearing did not comply with the April 14 order.

## DISCUSSION

Petitioner contends that despite the proceeding that occurred before the IJ on April 23, Petitioner has yet to receive a hearing in compliance with the April 14 order because the IJ wrongly denied Petitioner a continuance to obtain additional documentary evidence from the BFDF. ECF No. 10 at 4. In response, Respondents argue that Petitioner's motion should be denied because he failed to exhaust administrative remedies, 8 U.S.C. § 1226(e) insulates the IJ's decision from federal judicial review, and the IJ satisfied the requirements from the April 14 order. ECF No. 12 at 1.

### I. Respondents' Arguments Regarding Exhaustion and Jurisdiction

With respect to Respondents' argument that the pending motion must be denied

---

[1] Petitioner appears to have the same counsel for his proceedings in Immigration Court as before this Court.

2

because Petitioner did not exhaust his administrative remedies, the Court disagrees. ECF No. 12 (citing *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1–2 (S.D.N.Y. Jan. 23, 2017)). "Administrative exhaustion is not required when this Court is deciding only whether the petitioner received the relief that the Court already ordered." *Tucker v. Searls*, No. 22-CV-608-LJV, 2023 WL 3267085, at *2 (W.D.N.Y. May 5, 2023).

Similarly, the Court rejects Respondents' argument that 8 U.S.C. § 1226(e) deprives the Court of jurisdiction to resolve the pending motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Here, however, the Court is neither reviewing the IJ's "discretionary judgment" under § 1226 nor "set[ting] aside any action or decision by the Attorney General." Rather, "the Court is determining whether all of the conditions contained in the bond order were followed . . . ." *Mathon v. Searls*, 623 F. Supp. 3d 203, 213 (W.D.N.Y. 2022). "[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, and . . . . has the authority to see that its judgment is fully effectuated." *Davis v. Garland*, 708 F. Supp. 3d 283, 291 (W.D.N.Y. 2023) (citing *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019)).

## II. The Merits of Petitioner's Motion

Turning, then, to the merits of Petitioner's pending motion, the Court notes that without citing to any particular authority, Petitioner alleges several problems with the

denial of his request for a continuance: the regulations "do not permit an [IJ] to invoke a procedural deadline to defeat the substance of what the deadline was meant to ensure" (*Id.* at 11); by demanding evidence from the Petitioner that she knew Petitioner did not have, the IJ imposed "an impossible evidentiary burden" (*Id.* at 12); the IJ's failure to accommodate counsel's scheduling conflict left Petitioner represented at the hearing by counsel's colleague, who "had no prior involvement in the case and could not stand in for retained counsel's familiarity with Petitioner's circumstances" (*Id.*). In short, Petitioner argues as follows:

> [The IJ] invoked this Court's order to deny the time Petitioner needed to obtain his own evidence, and then relied on the absence of that evidence as the express basis for denying bond. That is not compliance with this Court's Order. It is the functional inverse of compliance – the use of the Order to ensure that the hearing the Order required could not occur in any meaningful sense.

*Id.* at 4–5.

### A. Legal Principles

With respect to Petitioner's argument regarding the IJ's denial of her motion for a continuance, Judge Geraci has aptly summarized the applicable considerations:

> Generally, immigration judges exercise "independent judgment and discretion" in the "disposition of [their] cases," 8 C.F.R. § 1003.10(b), and are responsible for scheduling matters and providing notice to the parties. *Id.* § 1003.18(a). Indeed, the Second Circuit has noted that "[j]ust as United States District Judges have broad discretion to schedule hearings and to grant or to deny continuances in matters before them, IJs have similarly broad discretion with respect to calendaring matters." *Sanusi v. Gonzales,* 445 F.3d 193, 199 (2d Cir. 2006). Challenges to calendaring decisions are reviewed for abuse of discretion. *See id.*

*Gutierrez Cupido v. Barr*, No. 19-CV-6367-FPG, 2020 WL 103477, at *4 (W.D.N.Y. Jan. 9, 2020). Thus, "the Court would only be inclined to grant relief on Petitioner's theory if

the IJ scheduled the hearing for the very purpose of interfering with Petitioner's right to a hearing or otherwise abused h[er] discretion when scheduling the matter." *Id.* A reviewing court finds an abuse of discretion only where the lower court's "decision rests on an error of law . . . or a clearly erroneous factual finding" or its decision "cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

As it relates to the hearing itself, "'it is important to emphasize that the Court's task [on a motion to enforce] is narrow: it is to determine whether Respondent complied with the [Court's order], not to review the hearing evidence de novo[.]'" *Blandon v. Barr*, 434 F. Supp. 3d 30, 38 (W.D.N.Y. 2020) (collecting cases, quoting *Apollinaire v. Barr*, No. 19-CV-6285-FPG, 2019 WL 4023560, at *2 (W.D.N.Y. Aug. 27, 2019)). In that regard, other courts in this District have identified two ways to challenge whether the adjudicator applied the correct standard of proof: (1) that the evidence itself could not, as a matter of law, have supported the adjudicator's conclusion, and (2) that the adjudicator did not apply the correct standard to the facts. *Tucker*, 2023 WL 3267085 at *5 (quoting *Hechavarria*, 358 F. Supp. 3d at 240).

## B. The IJ's Decision(s) in the Present Case

Bearing the foregoing principles in mind, the Court has carefully considered the parties' papers (ECF Nos. 10, 12, 13), the motion for a continuance at issue (ECF No. 10-2), the IJ's decision on the continuance (ECF No. 10-1), and the audio recording of the April 23 proceeding.[2] After a thorough review, the Court finds that Petitioner has

---

[2] Respondents provided the Court and Petitioner with an audio recording of the hearing. Petitioner has not expressly admitted to the correctness of the audio recording under Rule 7 of the Rules Governing [Habeas] Cases in the United States District Courts. Nevertheless, Respondents provided the Court and

failed to demonstrate that the IJ did not comply with the April 14 order.

### i. The Continuance

As it relates to scheduling the proceeding to interfere with Petitioner's right to a bond hearing, there is nothing in the record that supports this conclusion. Petitioner maintains that the IJ impermissibly invoked a procedural deadline to avoid fulfilling the substance of this Court's order, but Petitioner's exhibits show that a hearing was set before Petitioner ever sought a continuance, and that a chief consideration in the scheduling was satisfying the deadline this Court set in its April 14 order. *See* ECF Nos. 10-1, 10-2. Indeed, granting Petitioner's motion for a continuance would likely have caused the IJ to miss the Court's deadline, which under the terms of the April 14 order could have resulted in Petitioner's release from custody. ECF No. 7.

In addition, the Court does not find that the IJ abused her discretion by denying the continuance. To begin with, the IJ's denial of Petitioner's motion was not arbitrary, but rather based on the "defined hearing deadline" set by this Court in its April 14 order. ECF No. 10-1 at 1. Moreover, Petitioner's motion for a continuance identified two exhibits that he sought additional time to obtain as the basis for his motion: "proof of [his] verifiable residential address upon release and proof of his prior lawful employment . . . ." ECF No. 10-2 at 2. With respect to the first exhibit, although Petitioner may not have been able to access his preferred exhibit prior to the hearing to obtain the verifiable address upon release, the IJ acknowledged that the record did

---

Petitioner with the recording nearly three weeks prior to the filing of Petitioner's reply papers. Despite ample time to do so, Petitioner did not object to the correctness of the recording. The Court therefore accepts the recording as correct, and references it as "AR" in citations throughout the remainder of the Order.

include a letter from the sponsor in Cleveland, Ohio with whom Petitioner would live if released on bond. AR at 11:54. However, even taking that letter into account, the IJ noted that Petitioner failed to provide any meaningful evidence of a fixed address *prior to* his apprehension by ICE at the Canadian border and subsequent detention. AR at 10:06, 11:25. As to the second exhibit, the IJ also acknowledged that the record included a letter from Petitioner's employer, which stated that Petitioner had been working with the employer for approximately one month and generated over $14,000 of income. AR at 7:58, 12:26. Counsel did not suggest at the hearing there was any additional history.

### *ii. Counsel's Scheduling Conflicts*

The Court is also unpersuaded by Petitioner's suggestion that the IJ abused her discretion by declining to accommodate the scheduling conflicts of Petitioner's counsel, who was therefore obligated to find substitute counsel to appear on Petitioner's behalf so that she could attend a hearing in a different matter previously scheduled for the same time as Petitioner's hearing. ECF No. 10 at 12. For one, there is no indication in the record that the IJ was aware of these circumstances. Neither the motion for a continuance (ECF No. 10-2), nor substitute counsel who appeared on Petitioner's behalf at the hearing, indicated that primary counsel had a scheduling conflict and thus had to secure substitute counsel – who was less familiar with the facts of the case – to stand in for her. The motion did not indicate that counsel could not attend the hearing (ECF No. 10-2), and substitute counsel did not mention at the hearing that she was filling in on short notice.

Further, Petitioner also implies the IJ should have considered that counsel had been retained only a few days prior to the hearing. *Id.* Yet there is no indication in the

7

record that the IJ was aware of these facts, either. Primary counsel is also counsel of record for Petitioner in the case before this Court, the motion for a continuance does not mention any delays in counsel being retained in the case before the IJ, and substitute counsel indicated at the hearing only that counsel had been retained "within the last few weeks." AR at 10:30.

> More to the point, it is well-settled in this Circuit that:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*United States v. Cirami*, 535 F.2d 736, 740 (2d Cir. 1976) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 633–34 (1962)). In other words, consistent with well-settled precedent, the Court declines to relieve Petitioner of the burdens of the decision entered against him due to issues his attorney had in scheduling and adequately preparing substitute counsel. *See, e.g., J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981) ("It follows, then, that if counsel of record entrusts a legal matter to another attorney, that counsel of record is under a duty to exercise proper care in selecting the attorney and in supervising his work.").

### *iii. The Hearing Itself*

Lastly, the IJ both applied the proper standard and considered the appropriate factors – not just the absence of evidence regarding a post-release fixed address and employment history – in reaching her decision at the hearing that Petitioner had not met his burden to demonstrate he was not a flight risk.

"Under the regime fashioned by the INS and BIA, a noncitizen detained under § 1226(a) is subject to detention unless that person is able to show 'to the satisfaction of the Immigration Judge that he or she merits release on bond.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); citing also *Matter of Fatahi*, 26 I. & N. Dec. 791, 795 n.3 (B.I.A. 2016)). The Immigration Judge has broad discretion to consider a number of factors to determine whether the detainee merits release. *Matter of Guerra*, 24 I. & N. Dec. at 40. These factors include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Id.* In addition, the IJ may consider the alien's potential eligibility for relief from removal as a reflection on the risk of flight. *See, e.g., Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025) (finding the possibility of relief from removal to be "speculative," and citing *Matter of Andrade*, 19 I. & N. Dec. 488, 491 (BIA 1987)).

In the present case, the IJ found that Petitioner failed to meet his burden to show that he was not a flight risk based not only the slight evidence of a potential post-release fixed address (AR at 11:52), and an employment history that spanned only one month,

9

but also because there was an absence of evidence regarding a fixed address for Petitioner prior to his apprehension at the Canadian border (AR at 11:26); because Petitioner's length of residence in the United States was limited (AR at 11:52); and because Petitioner had no family ties in the United States, particularly those which would confer immigration or residency benefits (AR at 12:20). Thus the IJ in this case applied the proper standard, and considered permissible factors.

In sum, the IJ complied with this Court's order of April 14, 2026 to provide Petitioner with a bond hearing under "existing regulations" within 10 days of the date of the order. The IJ did not abuse her discretion in denying Petitioner a continuance, applied the correct legal standard at the bond hearing, and considered appropriate and permissible factors. Petitioner's motion to enforce [ECF No. 10] is therefore DENIED.

SO ORDERED.

Dated:    June 25, 2026
          Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

10